and Brian Larson, defendant's counter plaintiff's appellate, arguing before the appellate, please bring your hand up as well, arguing before the appellate, Mr. Patrick Lillings. I have one. May proceed. Good morning, Your Honors. Brian Connell on behalf of County Wide Landscaping and Brian Larson. Your Honors, this case dealt with a breach of contract. The first contract really isn't at issue. Both of the parties attached it to their pleadings. I'm sorry, can you not hear me? Is that better? Yes. The contract is not really in dispute. It was signed May 16th of 07. It was basically for an installation of a brick driveway at Ms. Benedict's home. Ms. Benedict admitted both interdeposition and a trial that she first attempted to cancel that contract about 54 days after it was signed on July 9th of 2007. The problem is that the contract had a provision in it that said you're only permitted to unilaterally rescind this contract within three days after it being signed. And there's really no dispute here that that did not occur. Well, they could have mutually agreed to rescind it. Isn't that correct? Yes, they could have. And isn't that what happened here? That would be the second issue. In order to have some kind of bilateral rescission, there would have been another contract entered into essentially agreeing between the two parties to rescind the contract on mutually agreeable terms. And that second contract, as I'll refer to it, would have required all the same hallmarks of a regular contract. It would have required an offer, acceptance, definitive terms, consideration. Well, we have the definitive terms. We have the amount that was going to be returned, correct? I would disagree with Your Honor. And why don't we have the amount, $15,000? Well, if you look at the testimony of Ms. Benedict herself, she was unsure, again, both at her deposition and at trial, that whether or not Brian Larson of Countywide was going to pay back $14,500 or $15,000. And then you turn to Mr. Larson's testimony, and his testimony was that he had agreed to pay back a portion of her initial deposit. And that initial deposit was $15,000, and he had agreed to pay back approximately five of that 15. So the fact that even if you take Ms. Benedict's testimony on its own without any other evidence, that right there says that there's not a definitive term there as far as what's going to be paid back. And she didn't equivocate about that. She wasn't sure whether it was $14,500 or $15,000. And that alone is an extremely necessary term for a contract to have a repayment agreement or a bilateral rescission or however you want to call it. Didn't she testify that in their telephone conversation, though, that Countrywide agreed through Mr. Larson to rescind the contract? No. In Mr. Larson's testimony, she didn't testify to that? I do not believe she did, Your Honor. I believe what she testified to was consistent with Mr. Larson, that he had agreed to pay her back a portion of her deposit. And then he began to make payments on that deposit. The problem arose when Mr. Larson had made these payments in hopes to just make peace with the whole thing. And Ms. Benedict went ahead and filed a complaint with the Better Business Bureau, the Attorney General's Office, and then subsequently this small claims case. What about consideration? Isn't there consideration in releasing them from their mutual obligations to the first contract? I would say that no, respectfully, there isn't. Basically, what Ms. Benedict told him is, well, you've got the benefit of not having to perform on this contract. And first of all, that's not supported by any authority in the brief. And second of all, it was not raised at trial, so it's waived. But most importantly, I think any time a contract would be rescinded, the breaching party could just say, well, you've got the benefit of not having to perform. And that actually isn't consideration. Mr. Larson had no obligation to perform on that contract anyway once plaintiff breached it. What specific evidence do you have that Mr. Larson was personally liable on the rescission agreement? Well, I would first point out that that would not be accounting for Mr. Larson's burden to prove that he somehow was not personally liable. That would be Ms. Benedict's burden. And at trial, there was absolutely nothing presented that would hold him personally liable. She did testify that she had had conversations with Mr. Larson. But again, he was representing countywide. He wasn't there in his individual capacity. Obviously, if you're going to be working with a business, you're going to have to have some kind of interaction with an actual human being. And that you have an interaction with that person, that individual, does not mean that that individual is impersonally liable for any kind of judgment against the company. And the fact that there was absolutely no evidence presented by plaintiff at trial, it doesn't support a verdict in favor of holding Mr. Larson personally liable. There was no suggestion of piercing the corporate veil, which is what would have had to be done in order to have a personal judgment against Mr. Larson. When partial payments were initially made on the so-called agreement to rescind, were they on the stationery of countrywide? If recollection serves, I think he was paying, and counsel may disagree with me, but my recollection is that he was paying them off countywide checks. But again, he stopped making those payments because it was his hope that the refunding of this $5,000, the portion of the payment that she actually made, would go ahead and buy the piece of this. He's a businessman. He has no intention of ruining his reputation or a possible client. How do you contend that we have jurisdiction to review the trial court's order denying your motion for summary judgment? Didn't that merge into the judgment rendered at trial? I suppose it would, Your Honors, simply because Judge Kelsey found that basically there's too many questions of fact in order to grant either of our cross motions. And so, yes, I would agree that it would merge into the trial. I guess if I wanted to really touch upon this idea of a bilateral cancellation, again, it would have to have all the hallmarks of a regular contract. There would have to be a meeting of the minds here. And I think the fact that neither Mr. Larson nor Ms. Benedict agree on the terms of that contract just serves as evidence that there was no meeting of the minds. Well, isn't if we look at that, let's say, assume the $5,000, I mean, isn't his claim that Larson agreed to refund the $5,000 of plaintiff's deposit inconsistent with the claim that he never agreed to cancel the contract? No, I don't think so. Well, how do you explain the apparent inconsistency here? I think that at all times he was willing to perform, and I think that there's really no evidence to the contrary there. Even if it was his intention to basically say, I'll give you a third of your deposit back, he couldn't unilaterally cancel the contract on his own, just as Ms. Benedict couldn't unilaterally cancel the contract. There would have to, again, be this meeting of the minds and this consideration, and there wasn't any. Really, he was just trying to resolve this as amicably as possible, but that he chose to do that doesn't mean that the contract has been canceled or rescinded. Did I answer your question? It doesn't look like it. Okay. So basically, the two parties have dissimilar testimony about what amount was to be paid back. Ms. Benedict herself testified that Brian Larson, she never agreed to give anything of value to Mr. Benedict in exchange for canceling the contract, which would mean that there would be no consideration in order to support a contract. What's your understanding? Well, I'm sorry, go ahead. What's the primary issue that the judge had to decide? Well, you know, the judge said it's prior effect at the trial court level, and Plaintiff really tries to turn this into an issue of credibility of the witnesses, which would be fine, except for the problem is that that judgment that he rendered would have to be based on some kind of competent evidence before him. And so really, the issue never got to a debate over the credibility of the witnesses because there was no evidence before him that would support a judgment, the judgment that he rendered, which was finding in favor of Ms. Benedict. Your argument is that the judge's findings against the man persuaded the evidence because there was no evidence supporting the plaintiff's claim. Yes. So going back, there's no consideration. There's no meeting of the minds. So the question here is not whether the trial judge felt that Ms. Benedict was more persuasive or that Mr. Larson was more persuasive. The analysis really never needed to get that far because there was no evidence. This isn't the case law if there was a promise by each party to rescind, that each promise is an adequate consideration to support a contract. But I don't know that Mr. Larson promised to rescind. And that's my problem with that, is that his testimony was very unequivocal in both his deputy decision and the trial that he never promised to cancel the contract. He initially tried to work with Ms. Benedict, you know, a broader number of samples because she basically wasn't happy with the color of the brick that was to be installed, specifically when it would get. Why did he make the car payments through three partial payments? I think they were like $750. $750 and $1500, I believe. Why did he make them in partial payments? My guess would be that that was what he could afford to make it at the time. Well, can't we find, based upon that, his implications that he is agreeing to rescind the contract by his actions? No, because he can't unilaterally rescind the contract. So, again, there would have to be this meeting of the minds and definitive terms as to what are we rescinding, what are the terms of payment, how much is going to be paid overall over what period of time. These are necessary terms for any contract. You know, it wasn't, you know, the finite details. These were the major basic terms. Well, she sent three letters, did she not, to him? She testified that she did, yes. Which recited their agreement from her standpoint, correct? From her standpoint, it did. Yes, the agreement to rescind and the fact that there would be payments made. And Mr. Larson testified that he never received those letters and Ms. Benedict had no proof that they were actually received. Right, but again, this was a decision for the trial court to make based on its assessment of the credibility of the witnesses, of any documentary evidence. Well, and at the same time, though, I mean, I can write a letter that says, Your Honor, I have an agreement with you that here's our agreement and here's the terms and I'm going to come over to your house and I'm going to do landscaping and you're going to pay me $100,000 to do it. And the fact that I wrote a letter to you doesn't mean much because it doesn't signify that you and I had an agreement. It only signifies that I have written you a letter with terms as I'd like them to be reflected. So I don't know that that was competent evidence for the trial judge to make any kind of holding that he did. Turning again to the issue of Mr. Larson's personal liability, haven't you forfeited that issue by not raising it before the trial court? No, Judge, I would say that, again, the burden was on Ms. Benedict in order to prove some kind of personal liability, some kind of piercing of the corporate veils that, you know, the corporate formalities weren't met and that was never raised. So there was no opportunity for Countywide to say, let us offer evidence to the contrary. It was never brought up. So there was no basis, I mean no basis, no evidence raised, so there was no basis for the trial judge to make a finding that he was somehow personally liable. It was never raised at trial and, again, that would have been Ms. Benedict's burden. It strains credulity for me to understand how defendant would have to prove that Mr. Benedict, I'm sorry, that Mr. Larson was somehow not personally liable where Ms. Benedict had never raised it at the trial court level and never presented any evidence that he was liable. It just wouldn't be our burden and it wouldn't be something that we could just bring up. And, again, there was absolutely nothing about, you know, Mr. Larson coming there in his individual capacity, that he was somehow inadequately capitalized, that he mixed funds, that he didn't observe corporate formalities, there was nothing. There just ended up being a verdict against him personally. And, really, the only thing that was brought up with regard to Mr. Larson personally was that he spoke to Ms. Benedict. And that's really not enough. It's really nothing. It's you talking to a representative of a company that you've hired to come out and do work for you at your home. So, again, if plaintiff wanted a judgment against him individually, that burden was on her to pierce the corporate bail at trial and there was absolutely, it was never brought up. Was there a judgment against Larson at the arbitration level and then after arbitration was rejected at the trial level or hearing level? I do not believe so. Pardon? I do not believe so. I believe it was against County White, but counsel could probably remember better because I didn't attend the arbitration. Anyway, I guess in conclusion, I wanted to bring up this issue of attorneys' fees and sanctions. In my reading of the brief, it's fairly clear to me that Ms. Benedict is upset that we've appealed this. And the fact that we've appealed a judgment that wasn't in our favor does not in and of itself warrant sanctions against us. And the fact that there's not attorneys' fees provision in the contract for her if she prevails or some statute that would enable her to have attorneys' fees does not mean that you then get to turn around and seek sanctions in order to compensate yourself for the legal fees spent on prosecuting and defending this matter. It wasn't her contention that there was no standard of review given and there was a violation of the Supreme Court Rule 341. I mean, in part, that was the reason for a request for the sanctions, correct? And I think that – I'm sorry, go ahead, Judge. You all have a call. You're tying this up, but you could complete your thought. Sure. I guess in summation, I think that any of the technical errors in her brief were resolved. And I certainly don't think that that's grounds for sanctions. I mean, the case law is cited. There, the plaintiff continued to pursue a case at the trial court level and the appellate court level, and he wouldn't let it go. That's the kind of case that warrants sanctions. Thank you. Thank you. May it please the Court, and good morning. My name is Patrick Williams, and I am the attorney for Lois Benedict. All three of you have raised the same question with my opponent, and that's the same question that existed from day one. And that is, how do you explain the inconsistency? How do you explain how it is that Mr. Larson went ahead and paid money in the face of a claim that my client breached the contract? And I still haven't heard the answer. I haven't heard it this morning. How do you explain why a person claiming the breach of a contract would turn around and refund any portion of a deposit? How can you reconcile that? And you can't. And they couldn't reconcile it at the arbitration, and they couldn't reconcile it at the trial. Judge Kelsey, that was the same question he asked in closing arguments. Please tell me, how is it that Mr. Larson went ahead and paid $1,750? There has been no answer. What specific evidence are you relying upon regarding the judgment against Larson personally? Judge, the judgment against Larson personally stems from his agreement with Lois Benedict to rescind the contract. How would Countrywide communicate with anybody except through an employee? Tell me. Valid point, Judge, valid point. And if you were my trial judge and you raised that point, I'd have to address it with you as part of the consideration of your case as my trial judge. That issue was not before this court.  And quite frankly, the notion that it is now my burden to have raised this and proved this at the time of trial, making an issue on appeal, when it was never raised in arbitration or at the trial level by Mr. Larson or Countywide, that argument is weighed. And I think that the case authority is abundant that if you don't raise it in the trial court, you can't bring it up to the appellate court in the first instance on appeal. So I submit, Your Honor, your point is well taken. But it, again, was an issue that needed to be raised at the trial level to preserve that matter for appeal. Well, you can't really ever raise a sufficiency of the evidence issue, can you? I mean, didn't this boil down to sufficiency of the evidence? What evidence, if any, was there that was introduced at trial to prove that Mr. Larson entered into this personally? Well, Mr. Larson is the one. If you read the trial transcript, Judge, there were several efforts by agents of Countywide that attempted to resolve the brick paper color issue. Finally, Mr. Larson said to Mrs. Benedict, I can't satisfy you. And Mrs. Benedict then said, I wish to have my deposit refunded. And Mr. Larson then agreed. All of the letters that were sent were sent to Mr. Larson. I mean, there is an evidentiary basis to support that. He signed all of these documents with a notation under each one of them either as on behalf of the corporation, did he not? I don't believe so, Judge. I don't. There were definitely company checks issued. If you look at the documents, there is either contractor listed under his signature, the name Countrywide, and Countrywide, Inc. is above his signature. And he signs then underneath on behalf of Countrywide. There isn't any signature line on any document in the record that you can point to, can you? Were they signed individually? Judge, the checks were not – he signed company checks. The letters were directed to Mr. Larson in an individual capacity. I don't – I'm not arguing with the court as to whether or not there could have been an argument raised as to his individual liability. But the fact is that that argument wasn't raised at the trial level, and the court is now being – this court is being asked to decipher evidence that was raised at the trial level, and it wasn't raised by the defendant at any time during those proceedings. So it's difficult to comment on what the sufficiency of the evidence may have been at the trial level for that purpose. And quite frankly, that's not the focus of this appeal and our response to the appeal, and specifically our request for sanctions. Because, again, this appeal and the notions on appeal don't deal with the Countrywide contract for the installation of the driveway. It deals with the return of her deposit. That's the focus. And just as they've argued here on appeal, they argued this obscure notion that since she didn't rescind the contract within three days, that that somehow provides a basis for the defendants to claim that there was never a proper rescission and that somehow they can proceed with the breach of – their breach of contract claim. That would be a legitimate countywide landscaping claim if we didn't have the payment. And that's where this case turns, it seems to me. And that's where the briefs turn, it seems to me. And that's where the problem with their briefs turn. Justice Bowman, you asked about what the standard of review is. Well, there's two standards. And that's what got fudged here. On summary judgment, the standard of review is de novo for this Court. On the findings of the trial court, the standard is the manifest weight of the – excuse me – the manifest weight of the evidence standard. And as indicated in our brief, the manifest weight of the evidence – Counsel conceded that. Right. She conceded that. Right. Okay. But the problem is that there's nothing in the brief, in their brief, which identifies how the trial court did not – or made a finding that was against the main manifest weight of the evidence or that the court made an error in the law that applies to rescission or that there was some finding that was made by the trial court that was inconsistent with the evidence. How can we conclude or look at what the trial court concluded as far as the term of the amount being returned when the plaintiff testified that she was unsure whether the amount was $14,500 or $15,000? How is that a definite term? According – Of a contract. And again, Judge, that goes to the credibility issue. If you look at her letters, her letters are unequivocal. It's $15,000. And if you read the trial testimony, there was a time where there was some talk about his diagram fees or some hourly fee that was going to knock it down to 15 – or from $15,000 to $14,500. The letters, however, indicate that the amount that was to be returned was the $15,000. And not one letter. Three letters. Their only response to that in the response at trial was, we never got it. We never got any of the three letters that supposedly memorialized the payment arrangements, although we got the three checks. And for each check, there followed a letter. So this wasn't a situation where she was trying to build her boat, so to speak, when things were going south. She was confirming the agreement not once, not twice, but three separate times. Now, the focus, it seems to me, on where we are at right now deals with the way the appeal has been brought to you. And that's something that we have raised in our motion to strike as well as in our motion for sanctions. We submit that there is absolutely no basis for this appeal to have been taken. They lost at arbitration. They lost at the trial court. They lost in each and every instance on the same basis that each of you here today raised. How do you address the inconsistency? How do you explain Mr. Larson paying the money and claiming the breach of contract claim? And you can't. That's the answer. You can't make that argument. And to take it to this level, to take it before you here today, we submit our grounds for this appeal being deemed frivolous and for sanctions to be awarded pursuant to Supreme Court Rule 375. Also, the shelling, if you will, of making argument in the brief and then citing deposition testimony rather than trial testimony as somehow being persuasive, given the separate standards of review, given the separate issues that they have chosen to raise in their appeal, I think makes the award of sanctions appropriate as well. Did the arbitration hearing result in an individual or a plaintiff against Larson? It was the same as in the trial court, Judge. Plaintiff had a judgment against both defendants on her complaint for the full amount of the deposit and judgment against the counter-plaintiff in favor of my client, the counter-defendant, on the counter-claim. It's all run parallel. And as I said, it's the same issue. Let's cut it all the way down. Let's cut it down to its basic level. It's why did you pay for money? Why? Simple. He received the money. If you use that as the basic issue, it would be utterly foolish for Larson to pay money when he's representing the corporation, when the plaintiff is contracting with the corporation. When they get to the rescission agreement, somebody from the corporation, the contract is with the corporation, not with Larson. You won't see anything with Larson's name on that contract other than the fact that it's on behalf of the corporation. I concede, and as I must, that the contract between my client for the installation of the brick-paper driveway was with the corporate defendant. I submit that the contract for the rescission and the repayment of the earnest money deposit was between Mr. Larson and my client. Why would it have been any different? I mean, if the original contract was entered into on behalf or by the corporation, why would he, for any reason, turn around and say, I'm going to be personally liable for this and personally return the money instead of on behalf of the corporation? Judge, I agree. I guess, to a certain extent, I'm not arguing with you, but I'm saying that that appears to have been what occurred. Mr. Larson is the one that initiated this discussion that I can't make you happy, Mrs. Benedict, with the color of your brick-paper. Mrs. Benedict said, I want to have my deposit back. Mr. Larson agreed to pay. You ask me whether or not that's sufficient? Mr. Larson, why would he agree to pay when the corporation got the $15,000? I don't know, Judge. A better question is, why would Mr. Larson be named in a lawsuit in an arbitration proceeding if he wasn't liable? Because the money wasn't available for a contract. And they brought in an individual that wasn't liable. No, no. That's the possible reason. Okay, and as I say, if that was the reason, why wasn't Mr. Larson raising that right out of the blocks with a motion to dismiss right after Mrs. Benedict filed her pro se complaint? Because apparently he thought that the suit was against the corporation and not him. And, you know, if that was the trial judge's argument, if that was an argument to the trial judge and the trial judge sustained that, then I wouldn't be here on that point. Can't sufficiency of the evidence be challenged any time? Well, I think if it's raised, yes, of course, of course. But then if we're going to say that the arguments that deal with the matters raised at the trial court are going to be considered for the first time on appeal, I think that that turns the obligations of the parties in terms of what their obligation is at the trial level on its head. You're actually acting as a trial panel. You agree that there's no necessity to file a post-trial motion in a civil case. You agree with that? There is no necessity, correct. And so it's one of those opportunities that he thought that would be impossible for a judge to enter a judgment against him because there's no evidence that he assumed the rescission agreement individually. And all of a sudden, bam, there is a judgment and there's no evidence in the record to support that. He could raise it on appeal, which he did. Well, number one, Judge, I don't agree that there was no other opportunity. When this case was – we didn't bring somebody in at the 11th Valley. Countywide and Larson were named from day one by Mrs. Benedict in her original complaint. When the matter was transferred from S.R. to Judge Kelsey, no motion was filed. When the matter went to arbitration, no motion was filed, no argument was made by Larson. When we went to trial, no motion was made, no argument was advanced at the trial court. When the judgment entered, when the judgment entered, the only argument that was made was that the judgment was for more than $10,000 and Judge Kelsey had no basis to do that. Now, to say that Mr. Larson was somehow disenfranchised by being ambushed by the judgment against him individually, I respectfully disagree with you, Your Honor. Well, counsel, in the complaint, can you point to an allegation against Mr. Larson individually? Were there – can you point to an allegation that would have led him to think that he was personally liable, going to be personally liable? He was named as a defendant in the case, Judge. I understand, but is there an allegation against him personally where you indicate that maybe the corporate veil is certainly going to be pierced? I'm looking at the amended complaint, Your Honor, which is part of the exhibit. We have named both defendant countywide landscaping and Brian Larson. Excuse me, that's at page A1 of the appendix, correct? Yes, Your Honor. Okay. And the – Paragraph 3. Paragraph 3. The balance of the pleading references both defendants by defendants having breached the repayment agreement and that the defendants are required to repay the balance of the agreement. And we ask for judgment against both defendants for the amount of the unpaid deposit. I request that this Court affirm the decision of the trial court. I would ask that the Court further consider the issue of sanctions in light of the way this appeal has been processed before this Court and the issues that have been raised by the appellant and the manner in which those issues have been raised. Thank you. Thank you. Ms. Benedict. It was not defendant's obligation to point out at trial that plaintiff was not proving the elements of his case, including any kind of evidence to suggest that Mr. Larson could be held liable. Yes, Judge. Why was no evidence entered at the trial court level contesting the fact that Larson was acting on behalf of the corporation and not individually regarding the agreement to rescind? There was no evidence presented that Mr. Larson was acting in his individual capacity, so on that basis alone, defendant should have prevailed. Was there anything in the complaint that included Mr. Larson? No, other than the fact that he was the representative countywide, which is consistent. Let me answer this. Paragraph 4 states, on or about May 16th, plaintiff and defendants entered into a contract for the installation of a custom brick driveway in accordance with the items. I emphasize the word plaintiff and defendant. Defendants. And the defendants are countywide and Brian Larson. Right. The defendants would have been countywide and Brian Larson in his capacity as president of countywide, and he didn't sign that contract as Brian Larson individually. He signed it as a representative of countywide. And there's no evidence to the contrary that he individually entered into a contract with Miss Benedict. We did show that it was against the manifest weight of the evidence because the judgment had to have been based on speculation by the trial judge as to the amount. Paragraph 4 states that Larson entered into the contract. Yes, it states that, but it doesn't state that he entered into it individually. And the fact that the contract is a countywide contract and that Brian Larson is the president of countywide. Will a lawyer faced with that type of allegation make some gesture to the court, evidentiary gesture to the court that Larson did not individually enter into the contract? I guess then that would go back to my point that we have no obligation to point out that plaintiff has approved his case. Well, what about going back further? What about a 2-6-15 motion? A motion to dismiss. Right. I can't testify to that because it wasn't my case at that point and I did not make that decision. I don't know why that litigation decision was made, so I honestly can't answer that. I agree with you that that could have been a possibility. Does it negate the ability of Mr. Larson to now stand up and say, wait, wait, wait, Miss Benedict never showed that I was personally liable. No, it does not. Could it have been cleaner? Certainly. Does it negate his rights? No, it doesn't. Again, the judgment had to have been based on speculation by the judge because even plaintiff couldn't testify how much was owed. We would have to disregard the fact that there was no consideration or the judge would have to disregard that in order to reach his verdict. And he also would have had to disregard the fact that there was no evidence to suggest that Brian Larson was personally liable on this. And that we lost at arbitration and that we lost at trial doesn't negate our absolute right to appeal this and it doesn't amount to sanctionable conduct. And that's all I have unless your honors have questions. Any questions? Thank you. Thank you. Court takes the case under consideration and the court now stands at recess.